UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

COMPUTER ASSOCIATES INTERNATIONAL, INC.,

                                  Plaintiff,

                  -against-

SIMPLE.COM, INC., and WIRED SOLUTIONS, LLC,

                              Defendants.

-------------------------------------------------------------X

CV 02-2748 (DRH) (MLO)

**ORAL ARGUMENT
REQUESTED**

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR OBJECTIONS TO**

**THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING**

**CLAIM CONSTRUCTION**

31092987.1

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................ 1

ARGUMENT .................................................................................................. 1

I.   THE SPECIAL MASTER'S CONSTRUCTION OF "ACTS
     INDEPENDENTLY" IS WRONG ............................................................ 2

     A.   "Acts Independently" Is Not A Limitation On "Window
          Object." ....................................................................................... 2

     B.   The Special Master's Construction Of "Acts Independently"
          Improperly Excludes A Disclosed Embodiment ............................. 6

     C.   The Special Master's Discussion Of "Tiling" In The Context
          Of The Microsoft Windows Environment Is Irrelevant And
          Does Not Support His Recommended Construction Of "Acts
          Independently." ........................................................................... 11

     D.   The Special Master's Construction Of "Acts Independently"
          Is Wrong Because It Incorporates A Definition Of "Content"
          That Is Not Consistent With The Glossary In The Simple
          Patents ........................................................................................ 12

     E.   The Special Master's Construction Of "Acts Independently"
          Is Wrong Because It Does Not Refer To Refreshing Or
          Reloading .................................................................................... 13

     F.   The Special Master's Construction Of "Acts Independently,"
          As Applied In His Infringement Analysis, Improperly Adds A
          Limitation ................................................................................... 13

II.  THE SPECIAL MASTER'S RECOMMENDED CONSTRUCTION
     OF "CONTINUOUSLY MANIFESTED" IS INCORRECT ................... 14

III. THE SPECIAL MASTER'S RECOMMENDED CONSTRUCTION
     OF "SOLELY CONTAINED WITHIN" IS INCORRECT..................... 16

CONCLUSION ............................................................................................ 17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*C.R. Bard, Inc. v. Unites States Surgical Corp.*,
  388 F.3d 858 (Fed. Cir. 2004) ........................................................................ 10

*Comark Communc'ns, Inc. v. Harris Corp.*,
  156 F.3d 1182 (Fed. Cir. 1998) ....................................................................... 2

*Hilgraeve Corp. v. Symantec Corp.*,
  265 F.3d at 1343 ........................................................................................... 15

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
  430 F.3d 1377 (Fed. Cir. 2005) ....................................................................... 1

*Phillips v. AWH Corp.*,
  415 F.3d 1303(Fed. Cir. 2005) .................................................................passim

*Renishaw PLC v. Marposs Societa' Per Azioni*,
  158 F.3d 1243 (Fed. Cir. 1998) .................................................................... 3, 5

*Vitronics Corp. v. Conceptronics, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) ..................................................................... 7, 9

**RULES**

Fed. R. Civ. P. 72(b) .......................................................................................... 1

## INTRODUCTION

Pursuant Federal Rule of Civil Procedure 72(b), Defendants Simple.com, Inc. and Wired Solutions, LLC (collectively "Simple") submit this memorandum in support of their Objections to the Special Master's Report and Recommendation Regarding Claim Construction ("Claim Construction R&R"). The Claim Construction R&R wrongly construes four terms from the claims of U.S. Patent Nos. 6,272,493 ("the '493 Patent"), 6,434,563 ("the '563 Patent"), and 6,535,882 ("the '882 Patent") (collectively "the Simple Patents"). The four claim terms that are wrongly construed are "window object" (particularly "acts independently of other content in a particular HTML document"), "content," "continuously manifested," and "solely contained within."

## ARGUMENT

The Special Master's Infringement R&R is governed by the standards set forth in Fed. R. Civ. P. 72(b). *See* Order Formally Appointing Special Master, dated June 21, 2004. Under Rule 72(b), objections to a special master's recommended disposition of a dispositive motion are reviewed *de novo*. Fed. R. Civ. P. 72(b). Claim construction is a question of law that is reviewed *de novo*. *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005). Rule 72(b) provides that the court shall consider additional evidence, such as expert declarations, when determining whether to adopt a magistrate or special master's decision.[1] *Id.*

---

[1] The entire summary judgment and *Markman* record is expressly incorporated for purposes of ruling on these Objections and Simple's Objections to the Report and Recommendation Regarding Infringement.

I.    **THE SPECIAL MASTER'S CONSTRUCTION OF "ACTS INDEPENDENTLY" IS WRONG.**

The Special Master's recommended construction of the term "window object," and particularly his restriction of that term to include the meaning of "acts independently of other content within a particular HTML document" is not based on either party's proposed construction and is incorrect.  The court should reject his construction, and instead construe "acts independently of other content within a particular HTML document" to mean "the content of one window object can be refreshed or changed independently of other window objects and/or any other content within the HTML document."

A.    <u>"Acts Independently" Is Not A Limitation On "Window Object."</u>

The term "a layer acts independently of other content within a particular HTML document" does not appear in any claim of the Simple Patents.  By incorporating this term into the construction of "window object" the Special Master improperly read a limitation from the specification into the claims.  *See Comark Communc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("[L]imitations from the specification are not to be read into the claims…").  Furthermore, as explained below, because the phrase "a layer acts independently…" uses the non-capitalized, rather than the capitalized, term "layer," no clear and deliberate intent exists on the part of the patentee to impart special meaning to that term.  *See Renishaw PLC v. Marposs Societa' Per Azioni,* 158 F.3d 1243, 1249 (Fed. Cir. 1998) ("Without an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary

meaning."). Thus, the Special Master erred in construing the "acts independently" phrase and importing it as a limitation on the claims.

The Special Master's recommended construction of "window object" is based on his misapplication of Glossary definitions for the terms "Layer" and "Content." The Glossary of the Simple Patents explicitly provides that "[t]he terms that are capitalized below bear the following meanings," and carefully indicates when a defined term includes other defined terms. *E.g.*, '493 Patent, col. 5, ll. 44-45. For example, according to the Glossary, a "window object" "is a **M**odule or **L**ayer." *E.g.*, *id.* at col. 5, l. 64 (emphasis added). The Federal Circuit has held that when a patentee's lexicography appears "with reasonable clarity, deliberateness, and precision," the definition selected by the patentee controls. *See Renishaw PLC v. Marposs Societa' Per Azioni,* 158 F.3d at 1249.

Conversely, when a term is not capitalized within a glossary definition, it has a generic, or ordinary meaning. *See id.* at 1249. Thus, the use of the non-capitalized word "layer" in the specification, *i.e.,* "[a] *layer* acts independently of other content within a particular HTML document," '493 Patent, col. 6, ll. 7-8 (emphasis added), indicates the patentee's intention that this is a description of the ordinary term "layer" and does not evidence an intent to add this to the definition of "Layer."

According to the Federal Circuit, the ordinary and customary meaning of a claim term is "the meaning that the term would have to a person of ordinary skill in the art at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Thus, "layer" simply refers to any generic or standard layer as understood by one of

ordinary skill in the art.  When properly construed in this manner, a person of ordinary skill in the art would understand that within the context of the specification, a "layer" sometimes, but not always, acts independently of some other content within the HTML document.  *See* Declaration of Richard Belgard, dated Mar. 13, 2006 ("Belgard Decl."), at ¶ 23; Defendants' Memorandum of Law in Opposition to Plaintiff Computer Associates International, Inc.'s Proposed Claim Construction, dated Dec. 8, 2004, at 5.

The Special Master's construction of "window object" is also incorrect to the extent that it relies upon an improper definition of "content."  The Glossary in the Simple Patents defines "Content" to mean "any form of digital data stream that may be supplied or sent to a computing system such as a personal computer."  *E.g.*, '493 Patent, col. 5, ll. 46-48; *see also* Claim Construction R&R at 131.  Based on this definition, the Special Master construed "content," in the context of a "window object" to mean "any form of digital data stream that may be supplied or sent to a computing system such as a personal computer,' and may include window object size and position information."  *Id.* at 140. This was error because the word "content" as used in the Glossary definition of "window object" does not necessarily have the same meaning as the term "Content" defined in the Glossary.  Indeed, the Glossary's express instruction that only capitalized terms bear particular meaning, means, conversely, that when an non-capitalized term is used within a definition, it has its ordinary or customary meaning.

By deliberately *not* capitalizing the term "content" appearing in the clause "a layer acts independently of other content within a particular HTML document" the patentee intended that the term be given its ordinary and customary meaning in the context of the

specification.  "Without an express intent to impart a novel meaning to claim terms, an

inventor's claim terms take on their ordinary meaning."  *Renishaw PLC v. Marposs*

*Societa' Per Azioni*, 158 F.3d at 1249.  Within the context of the Simple Patents, which

consistently use "content" to refer to text, graphics, or "media information such as news,

data, weather, sports, and the like,"[2] a person of ordinary skill in the art at the time of the

invention would understand the term "content" in the context of a "window object" to

_____

[2] For example, the specification provides, in pertinent part:

> The Internet and World Wide Web (WWW) have facilitated whole content
> delivery industries that provide up-to-the-minute delivery (and sale) of
> information such as news, weather, sports scores, horoscopes, stock and
> securities information, etc.

'493 Patent, col. 1, ll. 19-22.

> [O]nce a network surfer locates and accesses a content source (e.g., visits a
> web site containing content such as a list of related links, a news feed, stock
> related information, etc.) he may be faced with having to constantly refresh
> his web browser screen with the "next ten links," or scroll through a
> relatively large amount of text by using navigation buttons, scroll bars,
> browser application back and forward buttons, etc.  Such browsing of
> content can be time consuming, frustrating, and often, fruitless.

'493 Patent, col. 2, ll. 15-23.

> Content such as that received via an electronic data network, from a local
> hard disk, etc., may be displayed within content display section 122 of
> module 118.  Accordingly, any type of content may be manifested within
> module 118.  For example, static content like or similar to straight HTML
> content (e.g., text, graphics, etc.) may be manifested, while dynamic
> content such as from a content feed (e.g., a news fee, a stock ticker feed,
> etc.) may also be displayed and/or manifested.

'493 Patent, col. 8, ll. 57-65.

refer exclusively to things that are displayed within a window object.[3]  Indeed the Special

Master recognized that "content" "is what the 'window objects' in the web browser's

CME display."  Claim Construction R&R at 92.  The Special Master's interpretation of

"content" as including window object size and position information therefore conflicts

with the ordinary meaning of "content" as used consistently throughout the specification.

       B.    <u>The Special Master's Construction Of "Acts Independently" Improperly</u>
<u>Excludes A Disclosed Embodiment.</u>

By construing "acts independently" to mean "the activity associated with a layer,

such as moving or resizing, does not depend on other content within a particular HTML

document," the Special Master excluded one of the preferred embodiments – tiled

modules ("TMODs") – disclosed in the Simple Patents.  A claim construction that

excludes a preferred embodiment "is rarely, if ever, correct and would require highly

persuasive evidentiary support. . . ."  *Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d

1576, 1583 (Fed. Cir. 1996).

The specification of the Simple Patents includes a Glossary which defines a

TMOD as "a tiled module much like a tiled type window provided within an operating

system environment."  '493 Patent, col. 6, ll. 25-26, '563 Patent, col. 6, ll. 13-14; '882

Patent, col. 6, ll. 28-29; *see also* Belgard Decl., ¶ 5.  Furthermore, the specifications of

the '493 and '882 Patents include Fig. 2A, which depicts "a screen image of a content

---

[3] "The construction that stays true to the claim language and most naturally aligns with
the patent's description of the invention will be, in the end, the correct construction."
*Phillips v. AWH Corp.*, 415 F.3d at 1316.

manifestation environment (CME) that has been configured to manifest content within tiled window objects in accordance with a *preferred embodiment* of the present invention." '493 Patent, col. 9, ll. 49-52 (emphasis added), '882 Patent, col. 9, ll. 46-50 (emphasis added).  Under the Special Master's construction of "acts independently," this preferred embodiment is *not* covered by the Simple Patents.

According to the Claim Construction R&R, the Special Master believes he has shown that TMODs sometimes *do* "act independently" (according to his construction) of the "other content" displayed in the browser's CME, and that he has also shown that TMODs sometimes *do not* act independently of other content, *viz.*, the size and position of other "content"[4] if "'arranged in a table fashion' were understood to mean that TMODs were actually arranged in a table or grid. . . ."  Claim Construction R&R at 122; *see also* Belgard Decl., ¶¶ 11, 15.  For a TMOD to be distinct from the other preferred embodiment – draggable modules ("DMODs") – it must be (1) "actually arranged in a table or grid," (2) constrained to be arranged in a table or grid, or (3) moved, to be arranged in a table or grid, *i.e.*, the tiling act.  *Id.*, ¶¶ 18-19.

Although the Claim Construction R&R addressed the first situation –TMODs that are "actually arranged in a table or grid" – it did not address the other two alternatives. *Id.*, ¶ 21.  The Special Master noted that when TMODs are "actually arranged in a table

---

[4] According to the Special Master's claim construction, "content" includes the initial size and position information for a portlet.  Claim Construction R&R at 137.  However, size and position information provided by a user via portlet controls is not "content."  *Id.* at 138.

or grid" it may be inferred that TMODs situated below a TMOD that is being minimized or maximized move up or down, respectively.  Claim Construction R&R at 122.  If a TMOD is "constrained to be arranged in a table or grid," as in the second alternative, then an "acting TMOD" undertaking the act of moving, resizing, and minimizing, before any other acts had been undertaken would *not* be independent of the initial size and position of at least one other TMOD within a particular HTML document.  Belgard Decl., ¶ 21.  The "acting TMOD" in this example would "snap" into the table or grid, and would be dependent on at least one other TMOD whose position information had not changed from its downloaded position.  *Id.*  If a TMOD is "moved, to be arranged in a table or grid" (performing the "tiling" act), as in the third situation, then at least during act of "tiling," a TMOD is sometimes dependent on the size and position of at least one other TMOD that contains its original size and position information within a particular HTML document.  *Id.*, ¶ 22.

Thus, according to all possible interpretations of "arranged in a table fashion," at least one TMOD (as described in the specification of the Simple Patents) sometimes does *not* "act independently" according to the Special Master's construction.  The Special Master's construction of "acts independently," if adopted by this Court would not and could not cover all TMODs.  TMODs are within the scope of the term "window object," as claim 12 of the '493 Patent shows.  Claim 12, which depends from claim 1, contains the further limitation that at least one window object is a tiled window object.  The Special Master's construction of "acts independently" thus clearly ignores the Federal Circuit's warning that "rarely, if ever" may claims be construed in such a manner as to

exclude a preferred embodiment. *Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d at 1583. Moreover, to the limited extent such a construction is even possible, it can only be when there is "highly persuasive evidentiary support" for that construction. *Id*. Such evidence is not present here.

The evidence, including the Special Master's own findings, establishes that the recommended construction of "acts independently" is incorrect. The Special Master acknowledged that as demonstrated by "the specification's illustration of a TMOD environment, it is *unclear* whether the closing and resizing 'acts' of a given TMOD are 'independent[] of other content in a particular HTML document." Claim Construction R&R at 121. This statement alone shows that there is no "highly persuasive evidentiary support" for construing "acts independently" to exclude a preferred embodiment. If indeed the specification's illustration of a TMOD environment is "unclear" on this point, then there is no proof one way or the other about whether the closing and resizing "acts" of a given TMOD are dependent *or* independent. In light of the Special Master's acknowledgement of this fact, it would be incorrect to adopt a construction of "acts independently" which would not include all TMODs, a preferred embodiment, within the scope of the Simple Patents.

The Special Master's construction of "acts independently" is also proven incorrect by his own observations about TMODs' "snapping"[5] behavior. He stated that "the

_____

[5] The Special Master acknowledges that "'snapping' perhaps implies the existence of an invisible 'table' or grid arrangement into which window objects are forced to avoid

disputed language ["acts independently"] does not require that a layer have no effect on other content, nor does it require that a layer be independent of other content when not acting."  Claim Construction R&R at 118.  Moreover, he also stated that "the glossary does not require or even suggest 'snapping.'"  *Id*. at 120.  If true, the Simple Patents do not *exclude* snapping TMODs from the scope of the claims.  Indeed, without unequivocal proof that the patentee intended to disclaim snapping, it would be improper to conclude that the Simple Patents had excluded snapping TMODs from their scope.  *See Phillips v. AWH Corp*., 415 F.3d at 1316 (noting that "disclaimer, or disavowal, of claim scope by the inventor" must be "intentional"); *C.R. Bard, Inc. v. Unites States Surgical Corp*., 388 F.3d 858, 868 (Fed. Cir. 2004) (requiring "an unequivocal statement constituting a clear disclaimer of scope").

In addressing Fig. 2A of the '493 and '882 Patents, the Special Master acknowledged that while "Fig. 2A does not compel a conclusion that TMODs must 'snap,'. . . *inferences drawn from Fig. 2A may support such a conclusion*."  Claim Construction R&R at 122 (emphasis added).  He subsequently reiterated that finding, noting that "it may be inferred from Fig. 2A that whether minimized or maximized, a TMOD stays within the bounds of the column in which it is located."  *Id*. at 122-23.  Despite acknowledging these facts, the Special Master adopted a construction of "acts independently" that excludes the very thing that the Simple Patents disclose – snapping

overlap with other windows when dragged about and imprecisely dropped by user."
Claim Construction R&R at 118, n.55.

-10-

by TMODs.  In adopting this construction, the Special Master concedes that Simple's

expert opined that TMODs snap into position, that there was no dispute because CA did

not contend otherwise, and that the Simple Patents imply snapping.  *See id*. at 130.  In

light of the Special Master's own recognition of these facts, his construction of "acts

independently" is incorrect, and should not be adopted by this Court.

      C.     <u>The Special Master's Discussion Of "Tiling" In The Context Of The Microsoft Windows Environment Is Irrelevant And Does Not Support His Recommended Construction Of "Acts Independently."</u>

In striving to justify his construction of "acts independently," the Special Master

noted that in the Microsoft Windows environment, the term "tiled" when used in the

context of "tiled modules" (TMODs) suggests a particular layout, but "says nothing about

how the modules became tiled, or how the modules might become untiled, whether or

how the tiled modules may move, or what happens if they move."  Claim Construction

R&R at 120.  The Special Master's discussion of this issue does not support his

construction.  Under a proper construction, TMODs are preferred embodiments of the

Simple Patents.  That fact that TMODs may have previously been untiled, or may in the

future be acted upon so that they become untiled is irrelevant.  The only relevant

consideration is that period of time when they *are* "tiled modules" and *are* embodiments

of the Simple Patents.

The existence of TMODs implicates one of three scenarios:  (1) the tiled modules

are constrained to "snap" like the portlets in CA's CleverParth Portal, (2) objects which

are otherwise freely movable, like the portlets in CA's CleverPath Portal, are moved to a

"tiled" configuration when a user executes a "Tile" command, or (3) the tiled modules

cannot move at all, but instead are simply in an array.  *See* Belgard Decl., ¶¶ 18-19.

None of these scenarios involve modules that "act[] independently of other content," as

the Special Master has construed that term.  On the contrary, in the first scenario, the

snapping that occurs when the modules are moved is dependent on other content because

the modules come to rest adjacent to other modules.  In the second scenario, upon

execution of a "Tile" command, the modules act in a way that depends on other content,

*i.e.*, they automatically move into a tiled configuration.  In the third scenario, at least in

the case of minimizing a module other than the lowermost module in a column, the other

modules act by reacting to the minimized module.  Claim Construction R&R at 122.

Contrary to the Special Master's construction, TMODs do not always "act independently

of other content."  Thus, the Special Master's construction of "acts independently" is

wrong because it excludes TMODs, which are a preferred embodiment.

      D.     <u>The Special Master's Construction Of "Acts Independently" Is Wrong Because It Incorporates A Definition Of "Content" That Is Not Consistent With The Glossary In The Simple Patents.</u>

The Glossary in the Simple Patents defines "Content" to mean "any form of digital

data stream that may be supplied or sent to a computing system such as a personal

computer."  '493 Patent, col. 5, ll. 46-48; *see also* Claim Construction R&R at 131.

According to the Special Master, "the term 'content' should have the meaning provided

by the patentees. . . ."  *Id*. at 139.  Despite this statement, the Special Master construed

"Content," in the context of a "window object" to mean "'any form of digital data stream

that may be supplied or sent to a computing system such as a personal computer,' and

may include window object size and position information."  *Id*. at 140.  Adding

additional subject matter – "and may include window object size and position information" – to this construction which was not included in the Glossary's definition of "Content" improperly broadens the scope of "Content" which has the effect of limiting the scope of the claims of the Simple Patents.

> E.   The Special Master's Construction Of "Acts Independently" Is Wrong Because It Does Not Refer To Refreshing Or Reloading.

The Special Master's construction of "acts independently" lacks support in the specification, and, in fact, is refuted by it.  Simple, on the other hand, proposes a construction that is consistent with the specification:  "the content of one window object can be refreshed or changed independently of other window objects and/or any other content within the HTML document."  This proposed construction arises directly from the specification, which states:

> The operation of any of the MCs 124 shown within control section 120 need not have a global effect on the entirety of the CME in which the module 118 is displayed.  That is, there is no requirement that operation of any of the MCs 124 will cause a screen refresh within a WWW browser CME.  Such screen refreshes were common in prior web environments as an entire WWW browser CME (or at least a framed section thereof) was refreshed (re-loaded with content, etc.) each time a user selected or operated a link (e.g., a hyper-text link provided by a search engine to retrieve additional content such as "10-more links").

'493 Patent, col. 8, ll. 46-56.  Simple's construction of "acts independently" is not only consistent with the specification, but also the Special Master's recognition that "content" is primarily used to "connote media information such as news, data, weather, sports, and the like."  Claim Construction R&R at 132.  As the specification demonstrates, a proper

construction of "acts independently" focuses on the fact that refreshing or changing a layer is not necessary.

F.   The Special Master's Construction Of "Acts Independently," As Applied In His Infringement Analysis, Improperly Adds A Limitation.

In his Claim Construction R&R, the Special Master construed "acts independently" to mean "the acitivity associated with a layer, such as moving or resizing, does not depend on other content within a particular HTML document." Infringement R&R at 139-40. When he applied that construction to the parties' motions for summary judgment regarding infringement, however, he added a limitation. He added the limitation that "the 'acts independently' characteristic must be read as applying to 'all' acts of a layer." *Id.* at 65.

The Special Master's application of his construction of "acts independently" was improper for at least two reasons. First, by requiring that the "acts independently" limitation applies to "all" acts of a layer, the Special Master arbitrarily imported an additional limitation that does not appear in the claims and has no support in the specification. *See Phillips v. AWH Corp.*, 415 F. 3d at 1312. Second, by improperly applying that additional limitation, the Special Master ignored the well-established principle that "imperfect practice" of a patented invention does not avoid infringement. *See*, *e.g.*, *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d at 1343. The court should refuse, for these reasons among others, to adopt the Special Master's construction of "acts independently" and his recommendation to grant CA's motion for summary judgment of non-infringement.

## II.   THE SPECIAL MASTER'S RECOMMENDED CONSTRUCTION OF "CONTINUOUSLY MANIFESTED" IS INCORRECT.

The Special Master construed "said information to be dynamically and continuously manifested within said *** window object" to mean that "the display of information or content changes over time and the information is displayed without interruption within 'said *** window object' while the 'content display section' of the 'window object' is visible." Claim Construction R&R at 143. This construction improperly limits the "continuously manifested" requirement on a durational basis to the period while the content display section is visible without any explicit support in the intrinsic record, and should not be adopted by the Court.[6]

The phrase "continuously manifested" appears in one claim of each of the Simple Patents. *See* '493 Patent, claim 5; '882 Patent, claim 10; '563 Patent, claim 10. None of these claims includes the requirement that "the information is displayed without interruption within 'said *** window object' *while the 'content display section' of the*

_____

[6] The Special Master's recommended construction is also erroneous because it adopts meanings for certain individual words in the claim outside of their proper temporal context. In this case, the Claim Construction R&R improperly relies on the 2005 Merriam-Webster Online Dictionary for the definition of "manifested." Claim Construction R&R at 143 n.58. According to that dictionary, "manifested" means "readily perceived by the senses and especially by the sight." *Id.* at 143. This definition comports with neither party's proposed construction of the "continuously manifested" claim limitation. Furthermore, "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question *at the time of the invention, i.e.,* as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d at 1313. In fact, this principle of claim construction is cited in the report itself. *See* Claim Construction R&R at 8-9. Because the Special Master's recommended construction was made without regard for the relevant time

*'window object' is visible*."  The plain language of claim 5 of the '493 Patent, for example, merely requires that "said information . . . be dynamically and continuously manifested in at least one window object."  '493 Patent, col. 58, ll. 65-66.  No durational limitation is reasonably supported by the express language of the claim.  Similarly, no support exists in the specification or prosecution histories of the Simple Patents for limiting the "continuously manifested" term on a durational basis.

The proper construction of the term "continuously manifested" is "displayed without interruption."[7]  *See* Defendants' Memorandum of Law in Support of Summary Judgment on Claim Construction, dated Nov. 8, 2004, at 28-29; Defendants' Memorandum of Law In Opposition To Plaintiff Computer Associates International, Inc.'s Proposed Claim Construction, dated Dec. 8, 2004, at 10-13.  The Federal Circuit has held that "claims must be construed so as to be consistent with the specification, of which they are a part."  *Phillips v. AWH Corp.*, 415 F.3d at 1316.  By including the unsupported phrase "while the 'content display section' of the 'window object' is visible" in his recommended claim construction, the Special Master erred.  Accordingly, this additional limitation should be stricken and the term "continuously manifested" should be

---

frame, *i.e.*, at the time of invention, which in this case is 1999, the construction is erroneous and should not be adopted.

[7] In fact, the Special Master acknowledged the parties' agreement "that the phrase 'said information to be dynamically and continuously manifested within***said window object' at least means 'the display of information or content changes over time and the information is displayed without interruption within said at least one corresponding window object.'"  Claim Construction R&R at 142.

construed in accordance with its plain and ordinary meaning, namely, "displayed without interruption."

## III.   THE SPECIAL MASTER'S RECOMMENDED CONSTRUCTION OF "SOLELY CONTAINED WITHIN" IS INCORRECT.

The Special Master construed "window objects solely contained within said content manifestation environment" to mean "the window objects only appear inside the boundaries of the content manifestation environment."  Claim Construction R&R at 162. The proper construction is "the window objects are only kept inside the boundaries of the content manifestation environment."

The Special Master agrees that "within" means "inside," and that "contains" means "to keep within limits."  Claim Construction R&R at 161.  The Special Master subsequently concluded, however, that because the content manifestation environment, as defined by the patent glossaries, "allows visual manifestation of content to a viewer," the term "within" must therefore connote "visual appearance."  *Id.* at 161.  This conclusion is completely unsupported by the claim language and the patent specification.  Rather, the proper construction of "solely contained within" is "are only kept inside."  By including the unsupported phrase "only appear inside" in his recommended claim construction, the Special Master erred. Accordingly, the court should modify the Special Master's proposed construction of "window objects solely contained within said content manifestation environment" to mean "the window objects are only kept inside the boundaries of the content manifestation environment."

## CONCLUSION

For the foregoing reasons, Defendants Simple.com, Inc. and Wired Solutions,

LLC request that the court reject the Special Master's recommended construction of "acts

independently of other content in a particular HTML document," "content,"

"continuously manifested," and "solely contained within."

Dated:  March 16, 2006.　　　　　　　s/Alan M. Anderson
　　　　　　　　　　　　　　　　　Alan M. Anderson
　　　　　　　　　　　　　　　　　Sharna A. Wahlgren
　　　　　　　　　　　　　　　　　Christopher A. Young
　　　　　　　　　　　　　　　　　FULBRIGHT & JAWORSKI L.L.P.
　　　　　　　　　　　　　　　　　2100 IDS Center
　　　　　　　　　　　　　　　　　80 South Eighth Street
　　　　　　　　　　　　　　　　　Minneapolis, MN  55402-2112
　　　　　　　　　　　　　　　　　Telephone: (612) 321-2800
　　　　　　　　　　　　　　　　　Facsimile: (612) 321-9600

　　　　　　　　　　　　　　　　　Mark E. Ungerman
　　　　　　　　　　　　　　　　　FULBRIGHT & JAWORSKI L.L.P.
　　　　　　　　　　　　　　　　　Market Square
　　　　　　　　　　　　　　　　　801 Pennsylvania Avenue, N.W.
　　　　　　　　　　　　　　　　　Washington, D.C. 2004-2615
　　　　　　　　　　　　　　　　　Telephone:  (202) 662-0200
　　　　　　　　　　　　　　　　　Facsimile:  (202) 662-4643

　　　　　　　　　　　　　　　　　Stephen J. Smirti, Jr.
　　　　　　　　　　　　　　　　　Celeste M. Butera
　　　　　　　　　　　　　　　　　RIVKIN RADLER L.L.P.
　　　　　　　　　　　　　　　　　EAB Plaza
　　　　　　　　　　　　　　　　　West Tower – 10th Floor
　　　　　　　　　　　　　　　　　Uniondale, NY 11556-0111
　　　　　　　　　　　　　　　　　Telephone:  (516) 357-3000
　　　　　　　　　　　　　　　　　Facsimile:  (516) 357-3333

　　　　　　　　　　　　　　　　　Attorneys for Defendants Simple.com, Inc. and
　　　　　　　　　　　　　　　　　Wired Solutions, LLC