UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
CA, INC.,

       Plaintiff,      **MEMORANDUM & ORDER**
                   02 Civ. 2748 (DRH) (MLO)

   - against -

SIMPLE.COM, INC., WIRED
SOLUTIONS, LLC., a revoked Nevada LLC,

       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
**APPEARANCES:**

**COVINGTON & BURLING**
Attorneys for Plaintiff
One Front Street
San Francisco, California 94111
By: Samuel F. Ernst, Esq., Robert D. Fram, Esq., Michael M. Markman, Esq., & Leonard Joseph Martiniak, Esq.

**FARRELL FRITZ, P.C.**
Attorneys for Defendants
EAB Plaza
West Tower-14th Floor
Uniondale, New York 11556
By: Stephen J. Smirti, Jr., Esq., John P. McEntee, Esq., & Celeste M. Butera, Esq.

**FULBRIGHT & JAWORSKI LLP**
Attorneys for Defendants
666 Fifth Avenue
New York, NY 10103-3198
By: John E. Lynch, Esq. & Joseph P. Zammit, Esq.

**RIVKIN RADLER LLP**
Attorneys for Defendants
EAB Plaza
Uniondale, New York 11556
By: Celeste M. Butera, Esq. & Stephen J. Smirti, Jr., Esq.

GALE R. PETERSON, ESQ.
Special Master
112 E. Pecan Street
Suite 1800
San Antonio, Texas 78205

**HURLEY, Senior District Judge:**

Plaintiff CA Inc. ("CA"), formerly known as Computer Associates International Inc., commenced this action seeking a declaratory judgment that three patents owned by Defendants Simple.com, Inc. and Wired Solutions, LLC (collectively "Simple") are invalid, unenforceable, and not infringed by CA. Simple has counterclaimed for infringement. Presently before the Court is Simple's motion for summary judgment dismissing CA's common law unfair competition claim. For the reasons stated below, Simple's motion is granted.

## BACKGROUND

**I.     The Patents At Issue**

A complete factual recitation regarding this matter is contained in this Court's Claim Construction Memorandum & Order, dated March 5, 2009, familiarity with which is presumed.[1] For present purposes it suffices to state that the three patents at issue relate to computer technology and are U.S. Patent Nos. 6,272,493, 6,434,563, and 6,535,882 (the '493, '563, and '882 Patents respectively). In general, the subject matter claimed in the '493, '563, and '882 Patents is meant to provide, what the patentee terms, a windowed content manifestation

---

[1] Familiarity with the Court's Anticipation and Obviousness Memorandum & Order, dated March 5, 2009, Infringement Memorandum & Order, dated March 5, 2009, and Obviousness Memorandum & Order, dated March 17, 2009, is also presumed.

environment ("CME"). An exemplary CME is displayed below in **Figure 1**, a copy of Figure 2B, from the '493 Patent.

**Figure 1**



According to the patentee, this was an improvement over preexisting technology because the claimed invention lets one open, view, resize, minimize, move and otherwise use multiple window objects on the same web browser screen, without: (1) triggering a refresh;[2] (2) having to go back and forth from one web page to another; or (3) requiring the use of another web browser.

---

[2] "Refresh" means updating "the displayed web page with the newest content." (Special Master's Report and Recommendation Regarding Claim Construction, (Dkt. No. 559), at 173 .)

For example, a user could open, resize, move, close or otherwise manipulate the "NEWS" and "TRAVEL" windows, shown above without forcing the entire CME to be refreshed. The focus now shifts to the factual background pertinent to Simple's motion for summary judgment.

## II. Factual Background

In order to address the issues raised by Simple's motion for summary judgment, it is necessary to provide background regarding: the Special Master's report and recommendation on inequitable conduct (Dkt. No. 555 ("Inequitable Conduct R&R")), the parties' legal maneuvering related to CA's unfair competition claim, and the substance, timing, and scope of Simple's comments in the marketplace. Each will be detailed below *seriatim*.

### A. The Inequitable Conduct R&R

One of the claims asserted by CA in the instant action is that the patents in suit should be declared unenforceable because of Simple's inequitable conduct before the United States Patent and Trademark Office ("PTO"). (*See* Pl.'s Third Am. Compl. (Dkt. No. 631), ¶¶ 35-40.) CA's inequitable conduct claim relies heavily on a series of emails between Sandro Pasquali, the named inventor in the '493 and '882 Patents and a co-inventor of the '563 Patent, David Warga, Simple's outside counsel, and Erik Cherdak, the attorney who prosecuted the patents in suit. (*See* Inequitable Conduct R&R at 30-31; *see also id.* at 28-35 (providing the chronology of events related to CA's charge of inequitable conduct).) In one of his emails, Pasquali stated that "based on the arrival of sites like www.desktop.com and www.webos.com it is clear that . . . what I developed[, the subject matter claimed by the patents in suit,] was not original." (*Id.* at 31 (providing part of the email exchange between Warga, Pasquali, and Cherdak).) In an Order

4

dated March 9, 2009, the Court adopted the Special Master's recommendation and denied Simple's motion for summary judgment on the issue of inequitable conduct. (Dkt. No. 822; *see* Inequitable Conduct R&R at 68 (denying Simple's motion for summary judgment seeking to strike CA's inequitable conduct claim).) For present purposes it is sufficient to note that Simple's motion for summary judgment was denied because CA raised genuine issues of material fact as to whether Cherdak satisfied his "duty to investigate" the webos.com web page, mentioned in Pasquali's emails as invalidating prior art, and whether he faxed a copy of Pasquali's emails to the PTO in a timely manner without any intent to deceive. (*Id.* at 66-68.)

### B. The Unfair Competition Claim and the Parties' Legal Maneuvering

The focus now shifts to CA's assertion of the unfair competition claim and the parties' legal maneuvering related thereto.

By Memorandum & Order dated September 30, 2006, the Court adopted the Special Master's recommendation that CA be granted leave to amend its complaint to assert two new claims: the aforementioned inequitable conduct claim and a claim for unfair competition under New York common law. On October 24, 2006, CA filed its amended pleadings. (*See* Pl.'s Third Am. Compl., Dkt. No. 631, ¶¶ 41-49.) As pleaded, the unfair competition cause of action alleges that Simple made false representations to the marketplace and filed infringement claims against CA with the knowledge the patents at issue are invalid, which acts were likely to deceive a substantial segment of the market for CA's products and influence purchasing decisions, as well as result in a loss of business to CA.

Thereafter, on July 3, 2007, Simple served CA with their fifth set of requests for production ("Simple's 5th Produc. Req.", Dkt. No. 802-10, at 2-3) as well as a list of topics

related to CA's unfair competition claim that they wished to depose CA about (Dkt. No. 802-11 ("Palen Letter")). Among Simple's production requests were: (1) all documents related to what Simple termed "Illegal Accounting Practices"[3] including documents relating to "the illegal acts, indictments, and guilty pleas of [CA's] current and former executives"; (2) all documents "relating to [CA's] settlement agreement with the SEC and DOJ"; and (3) all documents from 2001 onwards "including but not limited to customer complaints, internal memos, surveys, studies, and reports, that refer or relate to [CA's] reputation, character, standing or perception in the marketplace . . . ." (Simple's 5th Produc. Req. at 2-3.) Some of the topics Simple sought to depose CA about include:

(1) the government's investigation of CA's alleged Illegal Accounting Practices;
(2) CA's settlement with the DOJ and SEC relating to its allegedly Illegal Accounting Practices;
(3) the settlement of various class action lawsuits filed against CA;
(4) statements by CA's customers regarding their use of CA's products and Simple's alleged unfair competition; and
(5) the "names of all [of CA's] customers or prospective customers who told [CA] that [its] reputation, character, standing, or perception in the marketplace has decreased because of Simple's alleged unfair competition."

(*See* Palen Letter at 2-6.) Next, during August and September of 2007, in what it asserts was part

---

[3] According to Simple, the phrase "Illegal Accounting Practices" means:

[T]he Securities and Exchange Commission's ("SEC") and Department of Justice's ("DOJ") allegations that from 1998 to 2000, you employed a companywide practice of falsely and fraudulently recording and reporting revenue with the intent to inflate quarterly earnings reports to meet analysts' expectations and bolster CA's stock price, and you unlawfully obstructed SEC's and DOJ's investigation into your fraudulent practices.

(Simple's 5th Produc. Req. at 2.)

of an attempt to "streamline this case for discovery," CA limited the damages sought for its unfair competition claims to its attorneys' fees and costs, withdrew paragraphs 44 through 47 of its Third Amended Complaint, and informed Simple that while it was "no longer contending that [their] statements had any effect on third parties or the marketplace," those statements were meant only to serve as "evidence of Simple's bad faith." (*See* CA's Opp'n at 3, 5, 20; Pl.,'s Resp. to Defs.' Separate Statement of Additional Disputed Facts in Opp'n to Defs.' Mot. for Summ. J. at 3-4; *see also generally* Letter from Sharna Wahlgren to Samuel F. Ernst dated July 16, 2007 (Dkt. No. 802-14) (noting that Simple would pursue their discovery requests and Rule 30(b)(6) deposition topics unless CA determined that it did not want to pursue its unfair competition claim).) As a result of the foregoing "streamlin[ing]," CA's unfair competition claim now reads as follows:

> **COUNT THREE (COMMON LAW UNFAIR COMPETITION)**
> 41. Plaintiff incorporates by reference and repeats the same as if fully rewritten herein all of the allegations, the foregoing paragraphs 1 through 40.
> 42. Defendants filed counterclaims in the current action accusing the Plaintiff of infringing the 493, 882 and 563 Patents in bad faith.
> 43. On information and belief, Defendants have made false and misleading representations to the marketplace, and have filed infringement claims against Plaintiff with the knowledge that the 493, 882 and 563 Patents are invalid and unenforceable.
> 44. Defendants' representations to the public, and the bad faith filing of its claims in this action, have and/or are likely to deceive a substantial segment of the market for Plaintiff's products and services into incorrectly believing that Plaintiff infringes valid patent rights held by Defendants, that Plaintiff is exposed to liability for its sale of accused infringing products, that Defendants' products are protected by valid patents, and that use by customers of Plaintiff's products will expose the customers to liability.
> 45. Defendants intended to deceive, and did deceive, Plaintiff's customers that purchased or intended to purchase products from

7

> the Plaintiff.
> ~~46. Plaintiff's customers have expressed concerns to Plaintiff relating to their continued use of Plaintiff's products as a result of Defendants' representations discussed above.~~
> ~~47. Defendants' representations are likely to influence purchasing decisions, have resulted in loss of business to Plaintiff, and will result in future loss of business to Plaintiff.~~
> 48. Defendants' conduct constitutes unfair competition against Plaintiff and this conduct has damaged Plaintiff in an amount to be proved at trial.
> 49. Defendant have acted with malice, oppression and fraud and punitive damages should be awarded against Defendants to punish this conduct and to serve as an example.

(*See* Pl.'s Third Am. Compl. ¶¶ 41-49 (formatting added to reflect portions of the complaint that were removed).) Having placed CA's unfair competition claim in context, the Court turns to Simple's public/marketplace comments.

### C. Simple's Public Statements

CA submits, *inter alia*, three exhibits that is claims were evidence of Simple's bad faith marketplace statements: (1) a "copy of a January 5, 2004[,] *New York Daily News* article entitled 'It's Heating Up At Computer Associates,'" (Dkt. No. 802-6 ("New York Daily News Article"), at SIM 007422); (2) a "copy of a June 5, 2002[,] Newsday article entitled 'CA Threatened With Patent Suit,'" (Dkt. No. 802-7 ("Newsday Article"), at CA 1363042-43); and (3) a "copy of an October 24, 2002[,] press release entitled 'PEARL to Assist Software Company,'" (Dkt. No. 802-8 ("PEARL Press Release"), at CA 1126962-64). (Declaration of Samuel F. Ernst in Supp. Of Pl.'s Opp'n to Defs.' Mot. For Summ. J. (Dkt. No. 802) ("Ernst Decl."), at 2-3.) Alan Anderson, Simple's former lead attorney, is quoted in the New York Daily News Article as follows: "There's a potential of real downside here for CA . . . . If there's a finding of infringement, not only would CA have to stop selling the technology but everybody who's

8

bought [the associated] products would have to stop using them.'" (New York Daily News Article (bracketed text in original).)  In the Newsday Article, Erik Cherdak stated that Simple and CA had been engaged in "negotiating a license" for Simple's claimed invention "when discussions broke down" and CA filed suit for declaratory judgment.  (Newsday Article at CA 1363042.)  According to Cherdak, Simple planned to "hold off filing its suit based on a continuation of" talks with CA.  (*Id.*)  Cherdak, also stated that Simple's "technology lets users display multiple windows in a single browser screen, allowing each to be moved, repositioned, minimized or maximized without requiring the Web browser to refresh the content display window."  (*Id.*)  Finally, Cherdak "suggested [that Simple] expect[ed] numerous other companies to license [their] technology."  (*Id.* at CA 1363043.)  In relevant part, the PEARL Press Release states that "Patent Enforcement and Royalties Ltd. (PEARL) . . . entered into an agreement with . . . Simple.com Inc., to assist with the enforcement of a series of its patents" and that Simple was in litigation with CA over allegations that its "Cleverpath portal product infringes the '493 [P]atent."  (PEARL Press Release at CA 1126962.)

Against this background, the Court will now summarize the parties' contentions on the instant motion.

### III. The Parties' Arguments

#### A. Simple's Motion For Summary Judgment

Simple urges that their motion for summary judgment should be granted because CA cannot recover on an unfair competition claim based solely on litigation conduct (malicious prosecution), CA's unfair competition claim is preempted by federal patent law, and there has been no misappropriation of a commercial advantage.  (Simple's Mot. Summ. J., Dkt. No. 796, at

9

6-19; Defs.' Reply Mem. of Law in Supp. of Their Mot. for Summ. J., Dkt. No. 816, ("Simple's Reply"), at 7-8.) More particularly, Simple maintains that CA's "cause of action premised upon the institution of groundless litigation is" actually nothing more that a malicious prosecution claim, which fails because: (1) CA has "disclaimed special damages and" only seeks "costs and attorney's fees"; (2) Simple does not seek "the issuance of 'some provisional remedy, such as an attachment, . . .'" or injunction; and (3) it is premature. (Simple's Mot. Summ. J. at 6-8.) According to Simple, New York law does not permit the recovery of "attorney's fees and costs . . . as damages." (*Id.* at 9-10.)

Simple also argues that CA's state law based unfair competition claim stands contrary to Congress' preemptive regulation in the area of patent law because it rests solely upon litigation conduct and actions before the PTO. (*Id.* at 12, 14-15 (citations and quotations omitted).) Simple's second preemption argument is that CA's request for "attorneys' fees and costs through the vehicle of an unfair competition claim" is actually an attempt to "evade the Congressionally mandated standards for an award of attorneys' fees under 35 U.S.C. § 285." (*Id.* at 16.)

Finally, Simple maintains that they have not misappropriated "another's commercial advantage," the gravamen of an unfair competition claim in New York. (Simple's Reply at 7-8 (listing cases).) As discussed in the excerpt below, Simple asserts that CA's accusations of and references to inequitable conduct amount to "theatrics." (*Id.* at 4.)

> Nevertheless, one brief observation may be helpful to dispel the theatrics of CA's allegations: CA's inequitable conduct accusations are predicated solely upon the inventor's assertion that, having seen certain websites after filing his patent application, he supposedly concluded that his inventions were "not original." (CA Opp. Mem. at 7.) The Special Master, however, already recognized that the inventor, Mr. Pasquali, was "a disgruntled former employee of Simple." (Special Master's Report and

> Recommendation Regarding Inequitable Conduct dated March 2, 2006 at p. 47). More importantly, the two websites which CA mentions in its brief that Mr. Pasquali allegedly saw *after* his patent applications were filed – www.desktop.com and www.webos.com (CA Opp. Mem. at 7) – were not even proffered as prior art by CA in its motion for summary judgment of invalidity based on obviousness (filed October 6, 2008 (Docket No. 789)).

(*Id.* at 4.) Simple also urges that their public statements regarding the case at bar fail to sustain an unfair competition claim because: (1) "CA has unequivocally disavowed reliance upon any such 'marketplace statements'" in an attempt to avoid discovery on certain issues; (2) their comments "do not represent an attempt to misappropriate" CA's assets; and (3) since CA's "attorneys' fees would have been incurred in this action regardless of whether the 'marketplace statements' were made," they "cannot be characterized as damages resulting from the marketplace statements." (*Id.* at 9-12.) Simple also argues that even if CA could have stated a claim for common law unfair competition, its disclaimer of all damages apart from attorneys' fees and litigation costs negates that claim. (*Id.* at 16-19.)

### B. CA's Opposition to the Motion for Summary Judgment

According to CA, a successful unfair competition claim "requires proof that (1) the patentee made representations or allegations of infringement; (2) in bad faith; *i.e.*, with knowledge that the patents were invalid, non-infringed, or unenforceable; (3) with resultant damages." (Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. Dismissing Pl.'s Unfair Competition Claim (Dkt. No. 800) (CA's Opp'n), at 1.) To that point, CA maintains that Simple's actions, which include filing "a separate lawsuit against CA in the Eastern District of Virginia alleging infringement of one of the three patents it later asserted in this case" and then "pursuing its patent infringement allegations as counterclaims here" (sham litigation/ bad faith

11

allegations of infringement) as well as making statements in the marketplace regarding their infringement claims and their "allegedly significant value" (bad faith statements in the marketplace), were undertaken with the knowledge that the '493, '563, and '882 Patents were unenforceable due to inequitable conduct, and led CA to incur the attorneys' fees and litigation costs (resultant damages) it now seeks to recover. (*Id.* at 1-3.)

## DISCUSSION

**I.    Summary Judgment Standard**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed. Cir. 1984). "In ruling on a motion for summary judgment, . . . [a court must] view the evidence presented in a light most favorable to the nonmoving party and . . . draw all reasonable inferences in favor of the nonmoving party." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990). Once a movant has shown the absence of a material issue of fact, the nonmovant must put forth sufficient evidence to show that a reasonable jury could rule in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**II.   Simple's Motion is Granted**

Even assuming the truth of CA's assertions, having withdrawn its allegation that Simple's statements or infringement claims asserted against CA had any effect on third parties or the marketplace, CA cannot prevail on its claim for unfair competition under New York law.

The law of unfair competition in New York encompasses a broad range of unfair practices. *See American Footwear Corp v. Gen'l Footwear Co.*, 609 F.2d 655, 662 (2d Cir. 1979); *Capitol Records Inc. v. MP3tunes, LLC*, 2009 WL 637102, at *4 (S.D.N.Y. Mar. 4, 2009). As the Second Circuit observed in *Roy Export Co. Establishment v. Columbia Broad. Sys.*, 672 F.2d 1095 (2d Cir. 1982):

> New York courts have noted the "incalculable variety" of illegal practices falling within the unfair competition rubric, . . . calling it a "broad and flexible doctrine" that depends "more upon the facts set forth . . . than in most causes of action." It has been broadly described as encompassing "any form of commercial immorality." or simply as "endeavoring to reap where [one] has not sown" . . . ; it is taking "the skill expenditures and labors of a competitor," . . . and "misappropriat[ing] for the commercial advantage of one person . . . a benefit or 'property' right belonging to another" . . . . The tort is adaptable and capricious.

*Id.* at 1105 (brackets in original) (citations omitted). Its reach is not, however, limitless. *See Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980). "The essence of an unfair competition claim is . . . the . . . misappropriat[ion of] the labors and expenditures of another," *id.*, which misappropriation was in bad faith. *Natural Organics Inc. v. Nutraceutical Corp.*, 271 Fed. Appx. 89, 90 (2d Cir. 2008) (summary order) (citing *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir. 1995)); *see also Metito (Overseas) Ltd. v. Gen'l Elec. Co.*, 2009 WL 399221, at *13 (S.D.N.Y. Feb. 18, 2009); *Abe's Room, Inc. v. Space Hunters, Inc.*, 38 A.D.3d 690, 693, 833 N.Y.S.2d 138, 140 (2d Dept. 2007) ("[T]o sustain a claim [of unfair competition] the plaintiffs must show that the defendants misappropriated the plaintiffs' labors, skills, expenditures, or good will and displayed some element of bad faith in doing so."); *Bongo Apparel, Inc. v. Iconix Brand Group, Inc.*, 856 N.Y.S.2d 22 (Sup Ct. N.Y. County 2008) ("While there is no complete list of activities which constitute unfair competition

under New York law, the essence of an unfair competition claim is that one may not act in bad faith to misappropriate the skill, expenditures, and labor of another. . . . The tort functions to protect 'property rights of commercial value . . . from any form of commercial immorality.'. . . 'The general principle evolved from all of the cases is that commercial unfairness will be restrained when it appears that there has been a misappropriation, for the commercial advantage of one person, of a benefit or property right belonging to another.'") (citations omitted).

In view of the absence of any claim that Simple's marketplace statements or claims of infringement had any effect on the marketplace or competition, CA's unfair competition claim fails due to the absence of any allegation that Simple misappropriated CA's labors, skills, expenditures, good will or other property right of commercial value. Not every act, even if taken in bad faith, constitutes unfair competition. *See Capitol Records*, 2009 WL 637102, at *4; *Randa Corp. v. Mulberry Thai Silk, Inc.*, 2000 WL 1741680, at *3, 58 U.S.P.Q. 1718 (Nov. 27, 2000) (While the tort of unfair competition may be a broad and flexible doctrine, it is not all-encompassing . . . .). "The tort is not all-encompassing . . . ; the New York Court of Appeals, rejecting the notion that unfair competition is equivalent to the amorphous term 'commercial unfairness' has stated that 'misappropriation of another's commercial advantage is a cornerstone of the tort.'" *Laser Diode Array, Inc. v. Paradigm Lasers, Inc.*, 964 F. Supp. 90, 95 (W.D.N.Y. 1997) (quoting *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 668 (1981)).

New York apparently does not recognize bad faith litigation as a type of unfair competition. *See Moore U.S.A. Inc. v. The Standard Register Co.*, 139 F. Supp. 2d 348, 361 (W.D.N.Y. 2001); *Cytyc Corp. v. Neoromedical Sys, Inc.*, 12 F. Supp. 2d 296, 303 (S.D.N.Y. 1998); *Lyle/Carlstrom Assocs. Inc. v. Manhattan Store Interiors, Inc.*, 1986 WL 84361, 231

U.S.P.Q. 748, 751 (E.D.N.Y. 1986); *cf. Bercy Indus. Inc. v. Mechanical Mirror Works, Inc.*, 279 F. Supp. 428, 429 (S.D.N.Y. 1968) (unfair competition counterclaim, which alleged that patentee knowing its patent was invalid and not infringed maliciously commenced infringement action, dismissed as it was in substance a claim for malicious prosecution but did not meet the requirements for a malicious prosecution claim).[4] The exclusion of bad faith litigation from the ambit of unfair competition makes sense considering the availability of recompense for such conduct in an action for malicious prosecution. Indeed, as discussed below, CA's claim is one for malicious prosecution mislabeled as unfair competition.

Even assuming the bad faith initiation of a patent infringement action could state a claim for unfair competition under New York law, CA's claim still must be dismissed. In order to recover for unfair competition under New York law, special damages must be alleged. *See Waste Distillation Technology, Inc. v. Blasland & Bouck Engineer, P.C.*, 136 A.D.2d 633, 634, 523 N.Y.S.2d 875, 877 (2d Dept. 1988) (dismissing unfair competition cause of action because of the absence of sufficient allegation of special damages); *Computer Aid, Inc. v. Hewlett-Packard Co.*, 56 F. Supp. 2d 526, 541 (E.D.Pa. 1999) (granting summary judgment on claim for unfair competition under New York law because of lack of evidence that plaintiff suffered special damages). In this context, special damages refers to "direct financial loss, lost dealings, or an

---

[4] In support of its contention that the bad faith institution of an infringement action constitutes unfair competition, CA cites *The Gleason Works v. Oerlikon Geartec, AG*, 141 F. Supp. 2d 334, 228 (W.D.N.Y. 2001) where the court stated that "while it is not clearly established, there is at least some authority to support a claim of unfair competition against a patentee who commences a patent infringement action in bad faith." This Court finds *Gleason Works* unpersuasive authority for the proposition that the bad faith institution of an infringement action constitutes unfair competition under New York law given that the two cases relied on in *Gleason Works* discussed federal and Illinois state law respectively.

15

accounting of the profits" caused by the anticompetitive acts at issue. *See id.*; *Florczak v. Oberriter*, 50 A.D.2d 1440, 1442, 857 N.Y.S.2d 308, 310 (3d Dept. 2008) (finding in favor of defendant on unfair competition claim, where, inter alia, plaintiff failed to submit proof that his sales actually decreased). *See generally Out of the Box Promotions, LLC v. Koschitzki*, 55 A.D.3d 575, 578, 866 N.Y.S.2d 677, 681 (2d Dept. 2008) (allegations that defendant appropriated plaintiff's customers and diverted business sufficient to support unfair competition claim). In other words, the damages suffered must be in the form of actual economic harm to the plaintiff's business. Here, CA does not contend that it lost any profits or customers as a result of the Simple's claims of infringement. The damages it claims to have suffered, the cost of defending this action, simply do not meet the standard of special damages. *Federal Folding Wall Corp. v. National Folding Wall Corp.*, 340 F. Supp. 141 (S.D.N.Y. 1971), relied on by CA, is not to the contrary. Therein the court found that, as the case was "exceptional" due to plaintiff's bad faith in bringing suit for trademark infringement, the defendant was entitled to recover its reasonable attorneys' fees "as an element of its damages." As such it would seem the court awarded attorneys' fees under the federal trademark statute. It is also notable that the court found the plaintiff had engaged in unfair competition by wrongfully causing a third party to cancel its contract with the defendant so plaintiff could take over the business as its own. In other words, the defendant had suffered a loss of business, which satisfies the requirement for special damages. *Id.* at 145-46.

Finally, despite the unfair competition label that CA attaches to its claim, as now constituted the claim is in essence one for malicious prosecution. "In order to prevail on a claim for malicious prosecution in New York, a plaintiff must show: '1) the initiation of an action by

16

the defendant against [him], 2) begun with malice, 3) without probable cause to believe it can succeed, 4) that ends in failure or, in other words, terminates in favor of the plaintiff.' . . . In addition, if the proceeding of which plaintiff complains was a civil action, the plaintiff must prove special injury - 'some interference with [the plaintiff's] person or property . . . beyond the ordinary burden of defending a lawsuit.'" *Engel v. CBS, Inc.*, 145 F.3d 499, 502 (2d Cir. 1998) (brackets in original) (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996). *See also Engel v. CBS, Inc.*, 93 N.Y.2d 195, 205 (1999) (holding that the special injury requirement in wrongful civil proceedings does not require the actual imposition of a provisional remedy; what is required is "some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit"). Measured against this standard, CA's claim must be dismissed.

## CONCLUSION

Simple's motion for summary judgment dismissing CA's counterclaim for unfair competition is granted.

Having previously granted CA's motion for summary judgment that the patent claims at issue are invalid as obvious, as well as CA's motion for summary judgment of non-infringement, it appears that all claims asserted in this action have been disposed of. Accordingly, CA shall submit a proposed judgment, on notice, within ten (10) days of the date hereof. Simple, shall then have ten (10) days from service thereof to file objections and/or a counter-proposed judgment. Finally, the Special Master is directed to submit, within forty-five (45) days of the date hereof, an affidavit and associated time logs in accordance with the Court's Order of Appointment dated June 21, 2004 (Docket No. 152). As indicated in said Order of

Appointment, the Court will allocate the costs associated with the appointment of the Special Master in accordance with the parties' ability to pay.  Accordingly, the parties shall submit affidavits and letters briefs on the subject within thirty (30) of the filing of the Special Master's affidavit.

**SO ORDERED.**

Dated: Central Islip, New York
 May 26,  2009

/s/
Denis R. Hurley
Senior District Judge